UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MALIBU MEDIA, LLC,<br><br>                              Plaintiff,<br><br>v.<br><br>JOHN DOE, subscriber assigned IP address 75.85.168.8,<br><br>                              Defendant. | Case No.: 15cv2922-BAS(WVG)<br><br>**ORDER GRANTING EX PARTE MOTION FOR LEAVE TO SERVE A THIRD PARTY SUBPOENA PRIOR TO A RULE 26(f) CONFERENCE** |

      The Ex Parte Motion for Leave to Serve a Third Party Subpoena Prior to a Rule 26(f) Conference is GRANTED. (Doc. No. 5.)

    1. BACKGROUND

      Plaintiff Malibu Media, LLC ("Plaintiff") filed this lawsuit on December 28, 2015, against John Doe Defendant ("Defendant"). Plaintiff alleges that it "only knows Defendant by his, her or its IP address." (Doc. No. 1, ¶9.) Plaintiff seeks recovery against Defendant for "persistent online infringe[ment] of Plaintiff's copyrights." (Doc. No. 1, ¶2.) Plaintiff represents that it is the registered owner of various movies, which Defendant illegally "downloaded, copied, and distributed … without authorization." (Doc. No. 1, ¶23-24.)

      Plaintiff alleges that Defendant infringed its copyrighted works using the BitTorrent File Distribution Network. In order for users of the BitTorrent File Distribution Network

to share files, "BitTorrent protocol breaks a file into many small pieces. Users then exchange these small pieces among each other instead of attempting to distribute a much larger digital file." (Doc. No. 1, ¶13.)  Each digital media file "has a unique cryptographic hash value … which acts as a digital fingerprint identifying the digital media file" such as a movie. (Doc. No. 1, ¶17.) Each piece of the broken down file is also assigned a unique cryptographic hash value. (Doc. No. 1, ¶15.)

Plaintiff traced Defendant's IP address from the BitTorrent File Distribution Network using an investigator, who established a direct TCP/IP connection with Defendant's IP address. (Doc. No. 1, ¶18.) The investigator then downloaded one or more pieces of each of the alleged infringing digital media files. (Doc. No. 1, ¶19.) Plaintiff's investigator also verified that the unique cryptographic hash values corresponded to works copyrighted by Plaintiff and that the downloaded files were identical (or strikingly similar or substantially similar) to copies of Plaintiff's works. (Doc. No. 1, ¶20-22.)  Plaintiff then connected Defendant's IP address to a location in this district using "proven IP address geolocation technology." (Doc. No. 1, ¶5.)

Although there has been no Rule 26(f) conference in this matter, nor has discovery begun, Plaintiff seeks expedited discovery.  Plaintiff requests that the Court allow Plaintiff to serve a subpoena upon Defendant's Internet Service Provider[1] ("ISP") to learn Defendant's true name and address.[2]  (*See* Doc. No. 5.) Plaintiff argues that there is good cause to allow the subpoena at this early juncture because it has "no [alternative] way to ascertain Defendant's identity" and there is risk that the ISP will destroy the records that reveal the information. (Doc. No. 5-1, at 16:11-12, 18-19.)

---

[1] Plaintiff seeks to serve Time Warner Cable as Defendant's ISP. (Doc. No. 5-1 at 8:8.)
[2] Under the Cable Privacy Act, a cable operator may disclose personally identifiable information without prior consent of the subscriber if the disclosure is made pursuant to a court order and the cable operator provides the subscriber with notice of the order. 47 U.S.C. § 551(c)(2)(B).

2. ANALYSIS & RULING

   a.  Expedited Discovery Requires Good Cause

Under Federal Rule of Civil Procedure 26(d)(1), a party must seek a court order to conduct expedited discovery prior to a Rule 26(f) conference between the parties. Fed. R. Civ. Proc. § 26(d)(1).  In the Ninth Circuit, a party must demonstrate "good cause" in order to obtain such an order. *Semitol, Inc. v. Tokyo Electron America, Inc.*, 208 F.R.D. 273, 276 (N.D. Cal. 2002) (adopting the "good cause" standard in evaluating a request for expedited discovery). Good cause exists "where the need for expedited discovery, in consideration of the administration of justice, outweighs the prejudice to the responding party." *Id*.

   b.  Courts Apply a Three Factor Test to Determine Whether Good Cause Exists

A three-factor test is applied to determine whether a party has demonstrated good cause. *Columbia Ins. Co. v. Seescandy.com*, 185 F.R.D. 573, 578-80 (N.D. Cal. 1999). The party must first "identify the missing party with sufficient specificity such that the Court can determine that the defendant is a real person or entity who could be sued in federal court." *Id*. Second, the party must describe "all previous steps taken to locate the elusive defendant" to ensure that he or she has made a good faith effort to identify the defendant. *Id*. Lastly, the party must establish that the lawsuit could withstand a motion to dismiss. *Id*. Where, as here, a plaintiff seeks expedited discovery to identify an infringing user of an IP address, Courts frequently find good cause. *See UMG Recordings, Inc. v. Doe*, C08-1193-SBA, 2008 WL 4104207, *3 (N.D. Cal. Sept. 3, 2008) (granting leave to take expedited discovery for documents that would reveal the identity and contact information for each Doe defendant); *see also Malibu Media, LLC, v. John Does 1-10*, 12-cv-3623ODW, 2012 WL 5832304 (C.D. Cal. Jun. 27, 2012) (same); *Capitol Records, Inc. et al. v. John Doe*, 07cv1570JM(POR), 2007 WL 2429830 (S.D. Cal. Aug. 24, 2007) (same).

    i.  Identification of Missing Party with Sufficient Specificity

The first prong of the three factor "good cause" test requires Plaintiff to identify Defendant with sufficient specificity such that the Court can determine he or she is a real person subject to the Court's jurisdiction. *Columbia Ins. Co.*, 185 F.R.D. at 578-80. Here,

Plaintiff provides several supporting declarations, including from a BitTorrent investigator, Daniel Susac, and another from Patrick Paige, a former detective in the Palm Beach County Sheriff's Department and founder of Computer Forensics, LLC. (Doc. No. 5-3, 5-4.) Plaintiff's Complaint also provides key information linking the IP address in question to this district.[3]

Mr. Susac states that he serves in the litigation support department of Excipio GmbH, a forensic investigation service company. (Doc. No. 5-3, ¶ 4-5.) Excipio GmbH "routinely monitors" the BitTorrent file distribution network to find IP addresses being used to distribute Plaintiff's copyrighted works without authorization. (Doc. No. 5-3, ¶ 6-7.) Mr. Susac used forensic software called Network Activity Recording and Supervision ("NARS") to scan the BitTorrent network for infringing activity involving Plaintiff's copyrighted works. (Doc. No. 5-3, ¶8-15.) These monitoring efforts and use of the NARS software revealed that the IP address at issue in this lawsuit transmitted copies or portions of copies of Plaintiff's copyrighted works at specific dates and times. (*Id.*; Doc. No. 1-1.)

Mr. Paige's testimony proffers that an IP address is sufficient means to identify the user behind it. (Doc. No. 5-4, ¶10,11.) He contends that "[t]he only entity able to correlate an IP address to a specific individual at a given date and time is the Internet Service Provider." (*Id.*) He also states that only in one instance, of approximately 200 during his tenure in the Computer Crimes Unit, was he unable to link the IP address to the alleged person behind the unlawful activity. (Doc. No. 5-4, ¶12-13.)

Plaintiff's Complaint traces the offending IP address to this district. Plaintiff states that it "used proven IP address geolocation technology, which has consistently worked in similar cases, to ensure that the Defendant's acts of copyright infringement occurred using an Internet Protocol address ("IP address") traced to a physical address located within this District." (Doc. No. 1, ¶5.)

---

[3] By signing the Complaint, counsel for Plaintiff has represented that the factual contentions therein (including Plaintiff's use of geolocation technology to link the IP address at issue to this district) "have evidentiary support." Fed. R. Civ. Proc. 11(b)(2).

Based on this evidence and information, the Court finds that Plaintiff has satisfied the "sufficient specificity" threshold. Plaintiff provides the Court with information about infringing activity at a particular IP address including the dates and times of particular infringing activity. (Doc. No. 1-1.) Plaintiff has narrowed the activity to a specific IP address, which for some courts, the IP address alone has been sufficient to satisfy the "sufficiently specific" prong. *See MCGIP, LLC v. Does 1-149*, C11-2331LB, 2011 WL 3607666 at *2 (N.D. Cal. Aug. 15, 2011). Moreover, Plaintiff also informs the Court that it used geolocation technology to trace the identified IP address to this district. *See Pink Lotus Entertainment, LLC v. Does 1-46*, No.C11-2263HRL, 2011 WL 2470986 (N.D. Cal. Jun. 21, 2011) (finding that allegation of geolocation technology use in complaint meets 'sufficiently specific' standard).[4] In aggregate, Plaintiff has provided the Court with sufficient reassurance that it seeks to sue a real person subject to the Court's jurisdiction.

### ii. Previous Attempts to Locate Defendant

In order to satisfy the second prong of the "good cause" standard, Plaintiff must describe all prior attempts to identify the Defendant and demonstrate a good faith effort to locate and effect service of the Complaint. Here, as recorded in the Declaration of Mr. Susac, Plaintiff hired a computer investigation company to "routinely monitor" the BitTorrent network and identify the IP addresses of BitTorrent users, like Defendant, who allegedly infringed upon Plaintiff's copyrighted material. (Doc. No. 5-3, ¶ 7-15.) However, as explained by Mr. Paige, based on his experience, "[t]he only entity able to correlate an IP address to a specific individual at a given date and time is the Internet Service Provider." (Doc. No. 5-4, ¶10.) Plaintiff also notes its unsuccessful efforts to utilize various web search tools such as Google to try and find Defendant using the IP address. (Doc. No. 5. at 21:17-27.) The Court therefore finds that Plaintiff has made a good faith effort to identify and locate Defendant.

---

[4] See Footnote 3, concerning the Federal Rules of Civil Procedure.

### iii. Whether Plaintiff Can Withstand a Motion to Dismiss

Plaintiff alleges direct copyright infringement. In order to survive a motion to dismiss, Plaintiff must demonstrate (1) ownership of a valid copyright; and (2) that Defendant violated the copyright owner's exclusive rights under the Copyright Act. *See Ellison v. Robertson*, 357 F.3d 1072, 1076 (9th Cir. 2004) (citing 17 U.S.C. § 501(a) (2003); *Ets-Hokin v. Skyy Spirits, Inc.*, 225 F.3d 1068, 1073 (9th Cir. 2000)). Here, Plaintiff purports to hold rights to the copyrighted works at issue. (Doc. No. 1, ¶3, 23, 30, Doc. No. 1-2.) Plaintiff alleges that between March 2015 and November 2015, Defendant used the BitTorrent File Distribution Network to "download[], cop[y], and distributed a complete copy of Plaintiff's works without authorization." (Doc. No. 1, ¶24.) As such, the Court finds that Plaintiff has alleged the prima facie elements of direct copyright infringement that would likely withstand a motion to dismiss. *See Columbia Ins. Co.*, 185 F.R.D. at 579-80.

### 3. CONCLUSION & ORDER

Having found good cause, the Court GRANTS Plaintiff's motion for expedited discovery. For the foregoing reasons, it is hereby ORDERED that:

   a. Plaintiff may serve a subpoena pursuant to Fed. R. Civ. P. 45, on Time Warner Cable that seeks only the true name and address of Defendant. Plaintiff may not subpoena additional information;

   b. Plaintiff may only use the disclosed information for the sole purpose of protecting its rights in pursuing this litigation;

   c. Within fourteen (14) calendar days after service of the subpoena, Time Warner Cable shall notify the subscriber that its identity has been subpoenaed by Plaintiff. The subscriber whose identity has been subpoenaed shall have thirty (30) calendar days from the date of such notice to challenge the disclosure by filing an appropriate pleading with this Court contesting the subpoena;

   d. If Time Warner Cable wishes to move to quash the subpoena, it shall do so

before the return date of the subpoena. The return date of the subpoena must allow for at least forty five (45) days from service to production. If a motion to quash or other customer challenge is brought, Time Warner Cable shall preserve the information sought by Plaintiff in the subpoena pending resolution of such motion or challenge; and

    e. Plaintiff shall serve a copy of this Order with any subpoena obtained and served pursuant to this Order to Time Warner Cable. Time Warner Cable, in turn, must provide a copy of this Order along with the required notice to the subscriber whose identity is sought pursuant to this Order.

IT IS SO ORDERED.

Dated: March 7, 2016

_____
Hon. William V. Gallo
United States Magistrate Judge